224 So.2d 688 (1969)
STATE of Florida Upon the Relation of DADE COUNTY, a Political Subdivision of the State, Petitioner,
v.
Honorable A.R. BRAUTIGAM, As Director of the State Beverage Department of Florida, and Honorable Fred O. Dickinson, Jr., As Comptroller of the State of Florida, Respondents.
No. 38481.
Supreme Court of Florida.
June 25, 1969.
*689 Thomas C. Britton, County Atty., and Stuart Simon, Asst. County Atty., for petitioner.
Earl Faircloth, Atty. Gen., and Paul Reed Toomey, Asst. Atty. Gen., for respondents.
ADKINS, Justice.
In original proceedings Dade County seeks a writ of mandamus requiring the Director of the State Beverage Department to certify to the State Comptroller the amounts derived from Dade County's cigarette tax as levied in the unincorporated areas of said county, and requiring the State Comptroller to pay to Dade County by warrant drawn upon the State Treasury such amount as the Director of the State Beverage Department certifies to the Comptroller is the amount of Dade County's cigarette tax collected in the unincorporated areas of the county during specified periods.
The relator Dade County in its petition alleges:
"2. Subsections 210.03(1) and 210.03(2), Florida Statutes, state in relevant part as follows:
`Any municipality in this state may, in the discretion of its governing body, impose an excise or privilege tax upon the sale, receipt, purchase, possession, consumption, handling, distribution and use of cigarettes sold or to be sold at retail within the territorial limits of such municipality up to the same amount for the same size and the same package content as set forth in § 210.02, * * *.
`The tax herein authorized shall be collected by the beverage department of the state in the same manner as the state tax imposed by § 210.02.'
"3. Section 6(f), Article VIII of the Constitution of the State of Florida effective on January 7, 1969, states:
`(f) DADE COUNTY  POWERS CONFERRED UPON MUNICIPALITIES. To the extent not inconsistent with the powers of existing municipalities or general law, the Metropolitan Government of Dade County may exercise all the powers conferred now or hereafter by general law upon municipalities.'"
It is then alleged that the Board of County Commissioners of Dade County enacted Ordinance 69-7 seeking to levy and impose the excise or privilege tax which municipalities are empowered to levy by statute on cigarettes sold or to be sold within those areas of Dade County not incorporated in any chartered municipality. A certified copy of this ordinance was filed with the Director of the State Beverage Department pursuant to the provisions of Fla. Stat., § 210.03(4), F.S.A. The petition then sets out the following provisions of Fla. Stat., § 210.20(2) (a), F.S.A., as follows:
"(2) As collections are received by the director from such cigarette taxes, he shall pay the same into a trust fund in the state treasury designated `cigarette tax collection trust fund' which shall be paid and distributed as follows:
"(a) The director shall from month to month certify to the comptroller the amount derived from each municipal tax *690 authorized in § 210.03, and such amount, less the service charge provided for in section 215.22, Florida Statutes, shall be paid to such municipality by warrant drawn by the comptroller upon the state treasury, which amount is hereby appropriated monthly out of such cigarette tax collection trust fund."
It is then alleged that the respondent Director of the State Beverage Department has not certified any amount to the respondent Comptroller as the amount derived from the excise tax levied by Dade County and, as a result, the county has not received the proceeds of the cigarette tax which it imposed.
By stipulation the respondents agreed that the facts and law detailed in the petition and the stipulation were correct and sufficient to present an issue requiring construction of the Florida Constitution and laws and determination of the validity and effect of the ordinance. The stipulation set forth the following material provisions to be considered:
"(1) `To the extent not inconsistent with * * * general law, the Metropolitan Government of Dade County may exercise all the powers conferred now * * * by general law upon municipalities.' Sec. 6(f), Art. VIII, Fla. Const. 1968.
"(2) Ch. 68-30, Laws of Florida, amending Sec. 210.20, F.S.: `(2) * * * (a) * * * twenty seven per cent (27%) of such amount [derived from the cigarette tax in the unincorporated areas of each county] * * * shall be paid to the board of county commissioners of the respective counties * * * which amounts are hereby appropriated out of the cigarette tax collection trust fund.'
"(3) `Dade County, home rule charter.  (1) * * * (b) may grant full power * * * to levy and collect such taxes as may be authorized by general law and no other taxes. * * *' Sec. 11, Art. VIII, Fla. Const. 1885, and Sec. 6(e), Art. VIII, Fla. Const. 1968.
"(4) `No money shall be drawn from the treasury except in pursuance of appropriation made by law.' Sec. 1(c), Art. VII, Const. `68.
"(5) The provision of Art. III, Sec. 11, Fla. Const. 1968, that all laws for `assessment or collection of taxes for * * * county purposes' must be general laws  not special, or even `general law of local application.'"
Thereupon, an alternative writ of mandamus was issued.
The respondents filed a return and motion to quash contending that the ordinance is unconstitutional and denying that Dade County is entitled to the proceeds of the cigarette excise tax.
A motion for issuance of a peremptory writ of mandamus notwithstanding the return operates as an admission by relator of the truth of the facts well pleaded, but claims that in law the return presents no sufficient ground why relief should not be granted. It contemplates the entry of a final order, without submission of evidence, quashing or dismissing the alternative writ or granting the peremptory writ. See 16 F.L.P., Mandamus, § 99. Although no formal motion for peremptory writ notwithstanding the return was filed, relator in his reply brief requests the Court to issue the peremptory writ. Considering this request, together with the stipulation, we will proceed to final determination.
In construing the provisions of Art. VIII, § 6(f), Fla. Const., 1968, F.S.A., it is appropriate to consider the posture of the law as it existed at the time of the adoption of the Constitution.
When county government was created in 1885 no one could have foreseen the accumulation of a great majority of the State's population in fifteen (15) urban counties. This rapid increase in population and industrialization has resulted in a demand *691 for more and more services on county governments and a need for new sources of revenue.
Dade County was one of the first counties to revise traditional governmental patterns to meet the needs of the people in a metropolitan-suburban area. The Home Rule Amendment for Dade County was approved by the voters of Florida in November 1956 (Fla. Const., 1885, Art. VIII, § 11), and shortly thereafter the home rule charter provided for in the amendment was approved by the electorate. See 19 Fla. Law Rev. 282 (1966-1967).
By and large the judiciary has given a faithful allegiance to the mandate of the Home Rule enabling amendment which proclaims:
"It is declared to be the intent of the Legislature and of the electors of the State of Florida to provide by this section home rule for the people of Dade County in local affairs and this section shall be liberally construed to carry out such purpose. Fla. Const., 1885, Art. VIII, § 11(9)." See Metro and Its Judicial History by Joseph P. Metzger, 15 Miami Law Rev. 283 (1960-1961).
The Home Rule Amendment (Fla. Const., 1885, Art. VIII, § 11(1) (b)) authorized Dade County to levy and collect only taxes that are authorized by general law, in the following language:
"* * * to levy and collect such taxes as may be authorized by general law and no other taxes, and to do everything necessary to carry on a central metropolitan government in Dade County."
The Dade County Charter, however, authorized the Board of County Commissioners to levy all taxes in unincorporated areas that were authorized to be levied by municipalities. Dade County Home Rule Charter, Art, I, § 1.01(24) (d) (1957). In construing this charter provision the Attorney General advised that the State Comptroller was not required to pay over to the county cigarette taxes collected in unincorporated areas since the county was not authorized by general law to levy such taxes. Atty.Gen.Rep. (1957-1958) 368. It was apparent that the provision in the charter conflicted with the provision in the Home Rule Amendment. Thus, the taxing power of Dade County remained the same as any other Florida county, although Dade County was performing municipal functions in furnishing many services to the unincorporated area.
In 1961 this Court held that Dade County, by virtue of the Home Rule Amendment and Charter, had the powers granted municipalities to borrow money under Ch. 184, Fla. Stat., F.S.A. State v. Dade County, 127 So.2d 881 (Fla. 1961). The above statute on its face appeared to grant powers only to municipalities. The Court in its opinion said:
"The Dade County Home Rule Amendment to the Florida Constitution, Section 11, Article VIII, F.S.A., authorized the electors of Dade County to adopt a Home Rule Charter which would empower the Board of County Commissioners of such County to `do everything necessary to carry on a central metropolitan government in Dade County.' By such constitutional amendment it was also provided, among others, that such Charter `may provide a method by which any and all of the functions or powers of any municipal corporation * * * may be transferred to the Board of County Commissioners of Dade County.'
"Pursuant to such constitutional authority, the Home Rule Charter adopted by the electors of Dade County authorized the Board of County Commissioners to `provide and regulate * * * waste and sewage collection and disposal and water supply and conservation programs,' Section 1.01A(9), and to have `all implied powers necessary and proper to carrying out such powers * * *.' Section 1.01B. In addition, the Board is expressly authorized to `exercise all powers and privileges granted to municipalities, counties and county officers by the Constitution and laws of the state, and all powers not prohibited by the Constitution *692 or by this Charter.' Section 1.01A(21)."
The Attorney General, in 1963, ruled that Dade County was a "municipality" within the meaning of Ch. 185, Fla. Stat., F.S.A. dealing with municipal police officers retirement trust funds. Atty.Gen.Rep. 063-70. Under this opinion Dade County could levy in the unincorporated area a municipal excise tax for the establishment of a "municipal firemen's pension trust fund" and a "municipal police officers' trust fund." These statutes authorized any municipality to levy an excise tax on insurance premiums within the corporate limits of the municipality, providing credit for such tax against the state tax, and direct the appropriate state officials to collect the tax and pay it over to the municipality.
On March 8, 1968, the Legislature enacted Chapter 68-30. Prior to the enactment of this law the cigarette tax was eight cents (8¢) per pack. All the tax collected in a city was paid to the city and those counties "that have no incorporated municipalities" received one-half the tax collected throughout the county. By Chapter 68-30, the tax was increased to fifteen cents (15¢) of which four cents (4¢) was retained by the state, eleven cents (11¢) collected in a city was given to the city and three cents (3¢) collected in the unincorporated area was given to the "respective counties." As the title states, Chapter 68-30 is an Act "extending distribution of tax collected in unincorporated areas to all counties." This law does not suggest by reference any legislative intent to prohibit the levy of the municipal tax by a home rule county empowered to exercise all municipal powers.
This was the posture of the law at the time of the adoption of Fla. Const., 1968, Art. VIII, § 6(f). No similar provision was in Fla. Const., 1885.
Respondent contends first that Dade County Ordinance 69-7 is inconsistent with the general law applicable to counties in that Ch. 68-30, Laws of Florida, provides that only twenty-seven per cent (27%) of the cigarette taxes collected in unincorporated areas of any county shall go to the county.
The word "inconsistent" as used in this provision of the constitution means contradictory in the sense of legislative provisions which cannot coexist. See Bodkin v. State, 132 Neb. 535, 272 N.W. 547, 548 (Neb. 1937). See State v. Collier County, 171 So.2d 890 (Fla. 1965). The power to levy the tax is conferred upon municipalities by general law. The expressed purpose of the municipal cigarette tax, as stated in Fla. Stat., § 210.03(5), F.S.A., is to enable the municipality to perform a specific list of "state functions" everyone of which Dade County under its Charter is authorized to and is performing in the unincorporated area. Ordinance 69-7 is consistent with Fla.Laws, Ch. 68-30, and all other provisions of Fla. Stat., Ch., 210 F.S.A.
Secondly, respondent contends that § 6(f), Art. VIII, Fla. Const., 1968, does not authorize the exercise of municipal taxing power so as to override the limitation of the original Home Rule Amendment stating that Dade County may levy only "such taxes as may be authorized by general law (governing tax levies) and no other taxes."
Prior to the adoption of Fla. Const., 1968, serious questions had arisen as to whether the taxing power of Dade County should be the same as any other Florida county even though the county performed municipal functions in the unincorporated area. The obvious purpose of § 6(f), Art. VIII, Fla. Const., 1968, was to lay this question at rest so that the municipal functions performed by Dade County in the unincorporated area could be adequately financed.
One of the serious limitations under the Dade County Home Rule Amendment was the inequity between the taxing powers of the county in unincorporated areas and the taxing powers of existing municipalities. The county could be called upon to provide more and more municipal type services in unincorporated areas, yet *693 would have no more taxing power than a small rural county. In recognition of this inequity in the tax structure, Art. VIII, § 6(f), must necessarily grant to the county the same power to levy and collect taxes as municipalities. This construction of the Constitution removes the existing inequity and gives the county the revenue necessary to meet the increasing demands for services.
The cigarette tax is not a state tax but a local municipal tax, State v. City of Key West, 97 So.2d 615, 616 (Fla. 1957). No state appropriation is necessary for this disbursement of a municipal tax. Dade County is included in the class described as "all municipalities" in statutes relating to "the powers conferred now or hereafter by general law upon municipalities."
The motion to quash the alternative writ is denied and a peremptory writ of mandamus should be issued.
It is so ordered.
ERVIN, C.J., and DREW, CARLTON and BOYD, JJ. concur.