QUESTION:
Are charter counties which have established municipal taxing and benefit units pursuant to s. 125.01(1)(q), F. S., and which meet all eligibility requirements as outlined in s. 218.23(1), F. S., entitled to a municipal share from the State Revenue Sharing Trust Fund established by the Revenue Sharing Act of 1972 (Part II, Ch. 218, as amended)?
SUMMARY:
A charter county which has established municipal service taxing or benefit units pursuant to its charter and s. 125.01(1)(q), F. S., is not entitled to receive a municipal share from the state revenue-sharing revenue fund established by the Revenue Sharing Act of 1972, part II, Ch. 218, F. S. Such a municipal service taxing or benefit unit is not within the definition of a `municipality' as defined in s. 218.21(3) and is not within the definition of a `unit of local government' as defined in s.218.21(1) and accordingly would not be eligible to receive a municipal share of revenue-sharing trust funds created under s.218.215 and as apportioned under s. 218.245(2).
Attached to your request is a letter from Mr. Kenneth Jenne, Chairman of the Board of County Commissioners of Broward County, wherein he explains in part the basis for the question presented. In his letter Mr. Jenne advises:
 Broward County, as a charter county, has established the unincorporated area of Broward County as a municipal service taxing and benefit unit pursuant to its charter and Chapter 125.01(q), Florida Statutes. This statute is an implementation of Article VII, Section 9(b) of the Constitution of the State of Florida, which states in part as follows: `A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.' The county provides various municipal services within the district such as the sheriff's road patrol, street lighting, etc. (Emphasis supplied.)
Mr. Jenne advises that the general counsel for Broward County is of the view that Broward County would be eligible for municipal
revenue sharing funds pursuant to s. 218.20, et seq., F. S., assuming that the revenue equivalent of 3 mills was met. Mr. Jenne states in his letter:
 Broward County, in relation to its municipal service taxing and benefit unit and the residents thereof, is performing the function of a municipality by providing municipal services. Such functions are separate and district and of a different nature from the county services that the county provides. (Emphasis supplied.)
Thus, the position of Broward County is that the municipal service taxing and benefit unit, which it has created pursuant to s.125.01(1)(q), F. S., is a `municipality' or `unit of local government,' as those terms are defined in s. 218.21, F. S. A reading of the involved statute compels me to conclude that the question must be answered in the negative.
The Revenue Sharing Act of 1972 is found in part II of Ch. 218, F. S., and is comprised of s. 218.20 through s. 218.26. Section218.21(1) provides:
 `Unit of local government' means a county or municipal government and shall not include any special district as defined in part III. (Emphasis supplied.)
The italicized language was enacted by Ch. 74-194, Laws of Florida, so prior to the addition of such language a `unit of local government' was defined to mean a county or municipal government.
The term `special district' is defined in part III of Ch. 218, F. S., in s. 218.31(5), as follows:
 `Special district' means a local unit of special government, except district school board and community college districts, created pursuant to general or special law for the purpose of performing prescribed specialized functions, including urban service functions, within limited boundaries. (Emphasis supplied.)
The municipal service taxing and benefit unit referred to in Mr. Jenne's letter, created pursuant to the Broward County charter and s. 125.01(1)(q), F. S., would appear to fall within the definition stated above. The benefit unit was created pursuant to general or special law for the purpose of performing prescribed specialized functions within the jurisdictional boundaries of the municipal service benefit unit. Inasmuch as the governmental head is the board of county commissioners, which is the local governmental authority, and inasmuch as the budget of the municipal service benefit unit is established by such local governmental authority, the municipal service benefit unit would be a `dependent' special district as opposed to an `independent' special district as defined in s. 218.31(7), F. S. Accordingly, the municipal service taxing and special benefit unit established by Broward County in the unincorporated areas of the county would not be a `unit of local government' as defined in s. 218.21(1), F. S. Only units of local government are eligible to participate in revenue sharing.See s. 218.23(1), F. S., which provides in part:
 To be eligible to participate in revenue sharing beyond the minimum entitlement in any fiscal year, a unit of local government is required to have: (Emphasis supplied.)
Section 218.21(2) and (3), F. S., provides:
 (2) `County' means a political subdivision of the state as established pursuant to s. 1, Art. VIII of the State Constitution.
 (3) `Municipality' means a municipality created pursuant to general or special law and metropolitan and consolidated governments as provided in s. 6(e) and (f) of Art. VIII of the State Constitution. Such municipality must have held an election for its legislative body pursuant to law and established such a legislative body which meets pursuant to law. (Emphasis supplied.)
It is apparent that the Legislature has carefully considered what constitutes a `county' and what constitutes a `municipality' and has not seen fit to include within the definition of either municipal service taxing or benefit units established pursuant to charter or s. 125.01(1)(q). In fact, the Legislature has indicated a contrary intent by specifically providing that a `unit of local government' shall not include any `special district' as defined in part III of Ch. 218, F. S.
The entire concept of revenue sharing and the formula for the apportionment of funds is designed to embrace only those entities specifically included therein, cf., AGO's 073-246 and 074-367. This is clearly recognized in s. 218.245, F. S. Therein the apportionment factor for all eligible counties is carefully delineated and the apportionment factor for all eligible municipalities is set forth in considerable detail. Furthermore, in s. 218.245(2)(d), the apportionment factor for a metropolitan or consolidated government, as provided by ss. 3 and 6(e) and (f), Art. VIII, State Const., is carefully spelled out. Said section provides:
 (d) For a metropolitan or consolidated government, as provided by s. 3, s. 6(e), or s. 6(f) of Art. VIII of the State Constitution, the population or sales tax collections of the unincorporated area or areas outside of urban service districts, if such have been established, as determined in paragraphs (a) through (c) above and after adjustments made as provided therein, shall be further adjusted by multiplying the adjusted or recalculated population or sales tax collections, as the case may be, by a percentage which is derived by dividing:
 1. The total amount of ad valorem taxes levied by the county government on real and personal property in the area of the county outside of municipal limits, as created pursuant to general or special law, or outside of urban service district limits, where such are established; by
 2. The total amount of ad valorem taxes levied on real and personal property by the county and municipal governments. (Emphasis supplied.)
Here the Legislature has specifically spoken to the situations which may arise involving metropolitan or consolidated governments recognizing the distinctions between unincorporated areas, or areas outside of urban service districts, and areas within the entire county or the municipalities found therein. The specific attention given to metropolitan or consolidated governments provided for in s. 6(e) and (f), Art. VIII, supra, and ss.218.21(3) and 218.245(2)(d), F. S., compels the inevitable conclusion that the Legislature did not intend for charter counties to establish municipal service taxing benefit units by ordinance pursuant to s. 125.01(1)(q), F. S., or pursuant to charters and capture a municipal share of revenue-sharing trust funds by asserting that the municipal service benefit unit was either a `municipality' or a `unit of local government.' Succinctly stated, the Legislature has not seen fit to define `municipality' to mean a municipality created pursuant to general or special law and metropolitan and consolidated governments as provided for in s. 6(e) and (f) of Art. VIII, State Const., and municipal service taxing or benefit units created or established pursuant to s. 125.01(1)(q) or pursuant to county home rule charter. The Legislature's silence to specifically so define the term `municipality' is significant. Under the rule expressio uniusest exclusio alterius, the statute operates on those things enumerated or expressly mentioned and excludes from its operation all things not expressly mentioned. Thayer v. State,335 So.2d 815, 817 (Fla. 1976); Interlachen Lakes Estates, Inc. v. Snyder,304 So.2d 433, 434 (Fla. 1974). It is further noted that, in defining the term `county,' the Legislature expressly provided for such term to be a political subdivision of the state as established pursuant to s. 1, Art. VIII, State Const. This includes both charter and noncharter counties. Accordingly, a charter county would be within the definition of the word `county' as would a noncharter county. It is illogical to presume that the Legislature would include charter counties within the definition of the term `municipality' without clear and specific language to that effect. This is especially true when, in defining the term `municipality,' the Legislature specifically included metropolitan and consolidated governments as provided in s. 6(e) and (f), Art. VIII, supra, and provided a specific apportionment factor relating to such consolidated and metropolitan governments. Had the Legislature intended for charter counties to be within the definition of `municipality,' it could easily have so provided.
The monetary ramifications are quite significant also. For instance, Dade County and Duval County, because both are metropolitan and consolidated governments as provided in s. 6(e) and (f) of Art. VIII, supra, would be required to receive funds allocated based upon the apportionment factor found in s.218.245(2)(d), F. S., while, if Broward County's contention is correct, Broward County would be eligible to receive both a county share and a municipal share based on the apportionment factor in s. 218.245. This would mean that a charter county would receive a considerably larger portion of revenue-sharing funds than a metropolitan or consolidated government because the formula defined by the Legislature in s. 218.245(2)(d) in apportioning funds to a metropolitan or consolidated government takes into consideration the areas of the county in the unincorporated area or areas outside of urban service districts and outside of municipal limits. That formula would be inapplicable if a charter county were a municipality or if a municipal service benefit unit were a municipality.
At the present time the eligibility test applied for both Duval and Dade Counties is based on their respective general countywide millages. The total general millage levied countywide is used for eligibility for the counties to participate in a county portion of revenue sharing. To participate in a municipal share, that portion of the county general millage levied only in the unincorporated area is the test of eligibility. Due to the ad valorem reduction factor as defined by s. 218.245(2)(d), F. S., charter counties would have a clear advantage over the consolidated and metropolitan governments. Section 218.245(2)(d) requires that the apportionment factors for the metropolitan and consolidated governments (when treated as a city) be reduced by a ratio of total tax levied within the county (both municipal and county) to those levied in only the unincorporated area. The staff of the Department of Revenue advises that for Metro-Dade the reduction is currently 70 percent and for Jax-Duval the reduction is currently 37 percent. It appears that if the unincorporated area in a charter county or a municipal taxing and benefit unit is considered as a municipality, this reduction would not be applicable. This would give the unincorporated area or taxing benefit unit a 100 percent share as a city while the Department of Revenue is required to reduce the share for Metro-Dade and Jax-Duval.
Admittedly, the Legislature could have defined the term `municipality' to include charter counties and brought them within the apportionment factor set forth in s. 218.245(2)(d), F. S., but it did not. As stated earlier herein, the Legislature indicated quite clearly a contrary intent by providing that a `unit of local government' shall not include any special district as defined in part III of Ch. 218, F. S.
I have examined the cases of State ex rel. Volusia County v. Dickinson, 269 So.2d 9, and State ex rel. Dade County v. Brautigam, 224 So.2d 688, and AGO 074-341, and nothing contained in either of the two cases or the AGO alters the result reached herein. The Volusia County case involved a mandamus action to determine whether or not a charter county expressly authorized to exercise such municipal powers as might be required to fulfill the intent of its charter had the power to levy an excise tax upon the sale of cigarettes in the unincorporated areas of the county. In the Volusia County case the court stated at p. 10:
 When Section 1(g), Article VIII and Section 9(a), Article VII are read together, it will be noted that charter counties and municipalities are placed in the same category for all practical purposes. That upon a county becoming a charter county it automatically becomes a metropolitan entity for self government purposes. This is so because Section 1(g) of Article VIII provides a charter county `shall have all powers of local self-government not inconsistent with general law. . . . The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law.' This all inclusive language unquestionably vests in a charter county the authority to levy any tax not inconsistent with general or special law as is permitted municipalities. (Emphasis supplied.)
As can be readily seen, the question there was whether or not a charter county had the power to levy an excise tax upon the sale of cigarettes. The court held that Volusia County did have such power because s. 1(g), Art. VIII, State Const., provided that a charter county `shall have all powers of local self-government not inconsistent with general law,' and that the governing body of the county operating under a charter could enact county ordinances not inconsistent with general law. Thus it was the constitutional language above which gave Volusia County the power to levy such excise tax. Similarly, the question before the court in theBrautigam case was whether or not Dade County, a metropolitan county, had the power to levy an excise tax on cigarettes sold within the unincorporated areas of Dade County. The Supreme Court therein quoted from s. 6(f), Art. VIII, State Const., which provided that `[t]o the extent not inconsistent with the powers of existing municipalities or general law, the Metropolitan Government of Dade County may exercise all the powers conferred now or hereafter by general law upon municipalities,' and held that this provision conveyed the power upon Dade County. Thus it is clear that in both the Volusia County and Brautigam cases the question before the Supreme Court was whether or not the respective counties had the power to levy an excise tax on the sale of cigarettes sold within the unincorporated areas of the respective counties as was permitted municipalities. This question is entirely dissimilar to the question presented by the instant request for opinion. Here the question is whether or not the Legislature has mandated that municipal service taxing or benefit units established by charter counties have been defined to be `municipalities' and `units of local government' so as to be entitled to a municipal share of the revenue-sharing trust fund. Similarly, AGO 074-341 addressed itself to an analysis and interpretation of specific statutes. That opinion was limited solely to the specific statutes involved therein and should not be extended to situations where the statutory provisions were clearly different.
From what has been previously said herein, it is readily apparent that the Legislature has not so defined a municipal service taxing or benefit unit.
Accordingly, until such time as the Legislature declares that a municipal service taxing or benefit unit established by a charter county is to be considered as a `municipality' and a `unit of local government,' neither such municipal service taxing or benefit unit nor the charter county creating such unit would be entitled to receive a municipal share of revenue-sharing trust funds.
Prepared by: Larry Levy Assistant Attorney General