# Supreme Court of Florida

_____

No. SC18-79
_____

**ORANGE COUNTY, FLORIDA,**
Petitioner,

vs.

**RICK SINGH, etc., et al.,**
Respondents.

April 18, 2019

PER CURIAM.

Respondents' Joint Motion to Recall Mandate is hereby granted. The opinion of this Court dated January 4, 2019, is hereby withdrawn, and this opinion is substituted in its place. *See* § 43.44, Fla. Stat. (2018) ("An appellate court may, as the circumstances and justice of the case may require, reconsider, revise, reform, or modify its own opinions and orders for the purpose of making the same accord with law and justice."); Fla. R. Jud. Admin. 2.205(b)(5). In light of the substituted opinion, we hereby deny Respondents' Joint Motion for Clarification.

We have for review the Fifth District Court of Appeal's decision in *Orange County v. Singh*, 230 So. 3d 639 (Fla. 5th DCA 2017), which affirmed a trial court

judgment invalidating an Orange County ordinance.[1]  Because home-rule counties may not enact ordinances on subjects preempted to the State and inconsistent with general law,[2] we approve the decision of the Fifth District.

## I.  Background

The underlying background was discussed in the Fifth District's opinion as follows:

> On August 19, 2014, the Orange County Board of Commissioners enacted an ordinance proposing an amendment to the Orange County Charter to provide for term limits and nonpartisan elections for six county constitutional officers—clerk of the circuit court, comptroller, property appraiser, sheriff, supervisor of elections, and tax collector.  The ordinance provided for the following ballot question to be presented for further approval:
>
> > CHARTER AMENDMENT PROVIDING FOR TERM LIMITS AND NON–PARTISAN ELECTIONS FOR COUNTY CONSTITUTIONAL OFFICERS
> > For the purpose of establishing term limits and nonpartisan elections for the Orange County Clerk of the Circuit Court, Comptroller, Property Appraiser, Sheriff, Supervisor of Elections and Tax Collector, this amendment provides for county constitutional officers to be elected on a non-partisan basis and subject to term limits of four consecutive full 4–year terms.
> > _____ Yes
> > _____ No

---

1.  We have jurisdiction.  Art. V, § 3(b)(3), Fla. Const.

2.  Article VIII, section 1(g) of the Florida Constitution provides that "[t]he governing body of a county operating under a charter may enact county ordinances not inconsistent with general law."

The ballot question appeared on the November 4, 2014[,] ballot and was approved by the majority of Orange County voters.  As a result, the relevant portions of section 703 of the Orange County Charter were amended (as underlined) to read:

> B. Except as may be specifically set forth in the Charter, the county officers referenced under Article VIII, Section 1(d) of the Florida Constitution and Chapter 72–461, Laws of Florida, shall not be governed by the Charter but instead governed by the Constitution and laws of the State of Florida.  The establishment of nonpartisan elections and term limits for county constitutional officers shall in no way affect or impugn their status as independent constitutional officers, and shall in no way imply any authority by the board whatsoever over such independent constitutional officers.
>
> C. Elections for all county constitutional offices shall be non-partisan.  No county constitutional office candidate shall be required to pay any party assessment or be required to state the party of which the candidate is a member.  All county constitutional office candidates' names shall be placed on the ballot without reference to political party affiliation.
>
> In the event that more than two (2) candidates have qualified for any single county constitutional office, an election shall be held at the time of the first primary election and, providing no candidate receives a majority of the votes cast, the two (2) candidates receiving the most votes shall be placed on the ballot for the general election.
>
> D. Any county constitutional officer who has held the same county constitutional office for the preceding four (4) full consecutive terms is prohibited from appearing on the ballot for reelection to that office; provided, however, that the terms of office beginning before January 1, 2015 shall not be counted.

Prior to the November 4, 2014 election, three Orange County constitutional officers—the sheriff, property appraiser, and tax collector (collectively "Appellees")—filed a suit for declaratory and

injunctive relief against Orange County, challenging the underlying county ordinance as well as the ballot title and summary. After the election, in ruling on competing summary judgment motions, the trial court upheld the portion of the charter amendment providing for term limits, but struck down that portion providing for nonpartisan elections. The trial court concluded that Orange County was prohibited from regulating nonpartisan elections for county constitutional officers because that subject matter was preempted to the Legislature.

*Singh*, 230 So. 3d at 640-41 (footnote omitted).

On appeal, the Fifth District affirmed the trial court's judgment. *Id.* at 640. The Fifth District held that section 97.0115, Florida Statutes, expressly preempts the Orange County ordinance requiring nonpartisan elections for county constitutional officers. *Id.* at 641-42. The Fifth District reasoned that the Legislature regulates elections generally through the Florida Election Code and "enacted section 97.0115, which expressly provides that all matters set forth in the Florida Election Code were preempted" to the Legislature. *Id.* at 642. The Fifth District further reasoned that chapter 105, Florida Statutes, "set forth provisions and procedures specific to nonpartisan elections," and "chapter 105 did not authorize counties to hold nonpartisan elections for the county constitutional officers that are the subject of the charter amendment at issue." *Id.*

## II. The Florida Election Code

Article VI, section 1 of the Florida Constitution provides that "[r]egistration and elections shall, and political party functions may, be regulated by law[.]" *See*

*Grapeland Heights Civic Ass'n v. City of Miami*, 267 So. 2d 321, 324 (Fla. 1972) ("[I]t necessarily follows that 'law' *in our constitution* means an enactment by the State Legislature . . .—not by a City Commission or any other political body."). The Legislature regulates elections through the Florida Election Code, which encompasses chapters 97-106, Florida Statutes (2018).[3] Importantly, the Florida Election Code contains express language of preemption as section 97.0115 states that "[a]ll matters set forth in chapters 97-105 are preempted to the state, except as otherwise specifically authorized by state or federal law." The Florida Election Code further explains that the Secretary of State, as "the chief election officer of the state," is to "[o]btain and maintain uniformity in the interpretation and implementation of the election laws." § 97.012(1), Fla. Stat. (2018).

The Florida Election Code generally contemplates partisan elections.[4] In other words, candidates nominated by political parties in the primary election are to appear on the general election ballot for most offices. *See* § 101.151(2)(c), Fla. Stat. (2018) ("Each nominee of a political party chosen in a primary shall appear on the general election ballot in the same numbered group or district as on the

---

3. Section 97.011, Florida Statutes (2018), provides "[c]hapters 97-106 inclusive shall be known and may be cited as 'The Florida Election Code.' "

4. In construing the Florida Election Code, it is necessary to read all provisions in pari materia. *Palm Beach Cty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1290 n.22 (Fla. 2000).

primary election ballot."). In fact, section 97.021(29) (emphasis added), defines a "[p]rimary election" as "an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, *county*, or district office."

Specifically, section 100.051 provides that "[t]he supervisor of elections of each county shall print on ballots to be used in the county at the next general election the names of candidates who have been nominated by a political party and the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code." In addition to the candidates nominated by political parties, no-party affiliation candidates, minor political party candidates, and spaces for write-in candidates may be listed on the general election ballot and may compete for the same offices as the major political party candidates in compliance with the Florida Election Code. § 99.0955, Fla. Stat. (2018); § 99.096, Fla. Stat. (2018); § 99.061(4)(b), Fla. Stat. (2018).

Regarding qualifying for nomination or election to county offices in particular, section 99.061(2) (emphasis added) provides that "each person seeking to qualify for nomination or election to a county office . . . shall file his or her qualification papers with, and pay the qualifying fee, which shall consist of the filing fee and election assessment, *and party assessment*, if any has been levied, to, the supervisor of elections of the county, or shall qualify by the petition process

pursuant to s. 99.095." The same subsection also states that "the supervisor of elections shall remit to the secretary of the state executive committee of *the political party to which the candidate belongs* the amount of the filing fee, two-thirds of which shall be used to promote *the candidacy of candidates for county offices* and the candidacy of members of the Legislature." *Id.* (emphasis added).

Regarding timing, section 100.031, Florida Statutes (2018), provides that "[a] general election shall be held in each county on the first Tuesday after the first Monday in November of each even-numbered year." Section 100.061, Florida Statutes (2018), states that "a primary election for nomination of candidates of political parties shall be held on the Tuesday 10 weeks prior to the general election." Further, section 100.041(1), Florida Statutes (2018) (emphasis added), lists the following offices, including several county constitutional offices, that are to be chosen at the general election after a primary election:

> State senators shall be elected for terms of 4 years, those from odd-numbered districts in each year the number of which is a multiple of 4 and those from even-numbered districts in each even-numbered year the number of which is not a multiple of 4. Members of the House of Representatives shall be elected for terms of 2 years in each even-numbered year. *In each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4.* The Governor and the administrative officers of the executive branch of the state shall be elected for terms of 4 years in each even-numbered year the number of which is not a multiple of 4. The terms of state offices other than the terms of members of the Legislature shall begin on the first Tuesday after the first Monday in January after said election. The

- 7 -

term of office of each member of the Legislature shall begin upon election.

*See also* § 98.015(1), Fla. Stat. (2018) ("A supervisor of elections shall be elected in each county at the general election in each year the number of which is a multiple of four for a 4-year term commencing on the first Tuesday after the first Monday in January succeeding his or her election.").

However, while the Florida Election Code contemplates elections for most offices to include candidates nominated by political parties, it also specifies that elections for certain offices must be nonpartisan. Pursuant to section 97.021(22), Florida Statutes (2018), " 'Nonpartisan office' means an office for which a candidate is prohibited from campaigning or qualifying for election or retention in office based on party affiliation." Then, chapter 105, entitled "Nonpartisan Elections," provides that judicial officers and school board members are nonpartisan offices. Candidates for judicial offices (or those seeking retention) are "prohibited from campaigning or qualifying for such [offices] based on party affiliation." § 105.011(2), Fla. Stat. (2018). Furthermore, section 105.09(1), Florida Statutes (2018), states that "[n]o political party or partisan political organization shall endorse, support, or assist any candidate in a campaign for election to judicial office." Section 105.035(1), Florida Statutes (2018), also explains that "[a] person seeking to qualify for election to the office of circuit judge or county court judge or the office of school board member may qualify for

- 8 -

election to such office by means of the petitioning process prescribed in this section." And section 105.041(3)-(4), Florida Statutes (2018), states that "[n]o reference to political party affiliation shall appear on any ballot with respect to any nonpartisan office or candidate," while "[s]pace shall be made available on the general election ballot" for write-in candidates for circuit and county court judge as well as school board members.

Regarding timing of the nonpartisan elections, section 105.051(1)(b), Florida Statutes (2018), provides that elections for judicial officers and school board members are to be conducted during the primary election with the possibility of a run-off during the general election:

> If two or more candidates, neither of whom is a write-in candidate, qualify for such an office, the names of those candidates shall be placed on the ballot at the primary election. If any candidate for such office receives a majority of the votes cast for such office in the primary election, the name of the candidate who receives such majority shall not appear on any other ballot unless a write-in candidate has qualified for such office. An unopposed candidate shall be deemed to have voted for himself or herself at the general election. If no candidate for such office receives a majority of the votes cast for such office in the primary election, the names of the two candidates receiving the highest number of votes for such office shall be placed on the general election ballot. If more than two candidates receive an equal and highest number of votes, the name of each candidate receiving an equal and highest number of votes shall be placed on the general election ballot. In any contest in which there is a tie for second place and the candidate placing first did not receive a majority of the votes cast for such office, the name of the candidate placing first and the name of each candidate tying for second shall be placed on the general election ballot.

Additionally, the nonpartisan chapter of the Florida Election Code, chapter 105, specifies that the retention elections of appellate judges are to take place during the general election. § 105.051(2), Fla. Stat. (2018).

Notably, chapter 105 does not include any county constitutional officers as nonpartisan. The specific references to the county constitutional officers in the Florida Election Code are in its more general provisions in which candidates nominated by political parties may appear on the general ballot. Moreover, although the Florida Election Code expressly allows for municipal elections to vary from its requirements pursuant to an ordinance or charter so long as the variance does not conflict with "any provision in the Florida Election Code that expressly applies to municipalities," § 100.3605(1), Florida Statutes (2018), there is no similar allowance for county elections.

**III. The Orange County Ordinance is Expressly Preempted and in Conflict**

Orange County contends that the ordinance at issue in this case is not expressly preempted by or in conflict with the Florida Election Code. We disagree.

In *Phantom of Brevard, Inc. v. Brevard County*, 3 So. 3d 309, 314 (Fla. 2008), this Court explained the following standards regarding whether a county ordinance is preempted by or in conflict with a statute:

> Pursuant to our Constitution, chartered counties have broad powers of self-government. *See* art. VIII, § 1(g), Fla. Const. Indeed,

under article VIII, section 1(g) of the Florida Constitution, chartered counties have the broad authority to "enact county ordinances not inconsistent with general law." *See also* David G. Tucker, *A Primer on Counties and Municipalities, Part I*, Fla. B.J., Mar. 2007, at 49. However, there are two ways that a county ordinance can be inconsistent with state law and therefore unconstitutional. First, a county cannot legislate in a field if the subject area has been preempted to the State. *See City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1243 (Fla. 2006). "Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the legislature." *Id.* (quoting *Phantom of Clearwater[, Inc. v. Pinellas County]*, 894 So. 2d [1011], 1018 [(Fla. 2d DCA 2005]). Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute. *See Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So. 2d 826, 831 (Fla. 1st DCA 1996). Local "ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute." *Thomas v. State*, 614 So. 2d 468, 470 (Fla. 1993); *Hillsborough County v. Fla. Rest. Ass'n*, 603 So. 2d 587, 591 (Fla. 2d DCA 1992) ("If [a county] has enacted such an inconsistent ordinance, the ordinance must be declared null and void."); *see also Rinzler v. Carson*, 262 So. 2d 661, 668 (Fla. 1972) ("A municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden.").

There is conflict between a local ordinance and a state statute when the local ordinance cannot coexist with the state statute. *See City of Hollywood*, 934 So. 2d at 1246; *see also State ex rel. Dade County v. Brautigam*, 224 So. 2d 688, 692 (Fla. 1969) (explaining that "inconsistent" as used in article VIII, section 6(f) of the Florida Constitution "means contradictory in the sense of legislative provisions which cannot coexist"). Stated otherwise, "[t]he test for conflict is whether 'in order to comply with one provision, a violation of the other is required.' " *Browning v. Sarasota Alliance for Fair Elections, Inc.*, 968 So. 2d 637, 649 (Fla. 2d DCA 2007) (quoting *Phantom of Clearwater*, 894 So. 2d at 1020), *review granted*, No. SC07-2074 (Fla. Nov. 29, 2007).

In this case, the Florida Election Code expressly preempts the Orange County ordinance requiring nonpartisan elections for its county constitutional officers. Section 97.0115 provides that "[a]ll matters set forth in chapters 97-105 are preempted to the state, except as otherwise specifically authorized by state or federal law." As explained above, the Florida Election Code contemplates partisan elections for most offices, and it does not specifically authorize otherwise for county constitutional officers. Furthermore, article VIII, section 1(d) of the Florida Constitution does not expressly label the election of county constitutional officers as "partisan" or "nonpartisan." Therefore, this constitutional provision is not an exception to the preemption language contained in section 97.0115.

The Florida Election Code contains detailed provisions specific to county constitutional officers and county elections, provisions that are within the portions of the code providing for partisan elections. Section 100.041 states that "[i]n each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4." *See also* § 100.031, Fla. Stat. ("A general election shall be held in each county . . . to choose a successor to each elective . . . county . . . officer . . . ."); § 98.015 (1), Fla. Stat. ("A supervisor of elections shall be elected in each county at the general election . . ."). Further, section 100.051 expressly provides that candidates listed

- 12 -

on the general election ballot are "candidates who have been nominated by a political party *and* the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code." (Emphasis added.)

> In contrast, the Orange County ordinance provides as follows:
>
> Elections for all county constitutional offices shall be non-partisan. No county constitutional office candidate shall be required to pay any party assessment or be required to state the party of which the candidate is a member. All county constitutional offices candidates' names shall be placed on the ballot without reference to party affiliation.

*Singh*, 230 So. 3d at 640-41 (quoting amended charter).

The portion of the ordinance that requires elections for county constitutional officers to be held during the primary election conflicts with section 100.041, which requires county constitutional officers to appear on the general election ballot. It also conflicts with section 98.015, Florida Statutes, which separately addresses the election of the supervisor of elections. *See* § 98.015, Fla. Stat. ("A supervisor of elections shall be elected in each county at the general election . . .").

Even if the portion of the Orange County ordinance that requires such an election to be held during the primary election is severed, a glaring and unconstitutional conflict remains. The Orange County ordinance prohibits a candidate for county constitutional office from being referenced on the ballot by party or seeking nomination by a party during the primary election. However, the

- 13 -

Florida Election Code expressly provides for nomination of candidates for county office by their respective political parties during the primary election.  *See* § 99.061(2), Fla. Stat. (candidates for county offices may qualify for nomination or election by filing the qualifying papers and paying "the filing fee and election assessment, and party assessment"); § 97.021(29), Fla. Stat. (defining "[p]rimary election" as "an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, county, or district office"); § 100.051, Fla. Stat. (explaining that candidates listed on the general election ballot include those "candidates who have been nominated by a political party"); *see also* § 100.031, Fla. Stat. ("A general election shall be held in each county . . . to choose a successor to each elective . . . county  . . . officer . . . ."); § 100.041(1), Fla. Stat. ("In each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4."); § 98.015(1), Fla. Stat. ("A supervisor of elections shall be elected in each county at the general election . . . .").  Therefore, by banning a candidate for county constitutional office from running by party or seeking nomination by party, the ordinance directly conflicts with the Florida Election Code.  And this Court has explained that a local

government "cannot forbid what the legislature has expressly licensed, authorized or required." *Rinzler*, 262 So. 2d at 668.

Accordingly, because the Orange County ordinance prohibits candidates from running based on their party affiliation or seeking the nomination of their party during the primary election, which is expressly provided for in the Florida Election Code, the ordinance directly conflicts with the Florida Election Code. It also conflicts with the Florida Election Code's requirement that the candidates for county constitutional officers appear on the general election ballot.

## IV. Conclusion

As explained above, the Florida Election Code expressly preempts the Orange County ordinance, an ordinance that is in direct conflict with the Florida Election Code regarding whether candidates nominated by major political parties in the primary election may appear on the general election ballot for county constitutional officers. Therefore, we approve the decision of the Fifth District, which held that the Florida Election Code preempts the Orange County ordinance requiring nonpartisan elections for county constitutional officers.[5]

It is so ordered.

---

5. As we approve the Fifth District's decision concluding the ordinance is expressly preempted, we also approve the Fifth District's decision affirming the remaining issues presented by Respondents regarding standing, the single-subject rule, and the ballot title and summary.

CANADY, C.J., and POLSTON, LAWSON, LAGOA, LUCK, and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

In *Orange County v. Singh*, 44 Fla. L. Weekly S102 (Fla. Jan. 4, 2019), this Court held that the Florida Election Code does not expressly preempt the home rule authority of Orange County to determine that its constitutional officers be elected in a general election without partisan affiliation.[6] I concurred in that decision, and I continue to agree with the analysis and conclusion reached by the earlier majority. Accordingly, I dissent from the current majority's holding that the nonpartisan-election portion of the Orange County ordinance is preempted by the Florida Election Code and to the decision of the majority to recall the mandate issued in this case.

Application for Review of the Decision of the District Court of Appeal – Constitutional Construction/Direct Conflict of Decisions

Fifth District - Case Nos. 5D16-2509 and 5D16-2511

(Orange County)

---

6. We further determined a portion of the ordinance that was inconsistent with the Florida Election Code law was severable, such that the remainder could stand. *Singh*, 44 Fla. L. Weekly at S104.

Gregory T. Stewart, Carly J. Schrader, and Evan J. Rosenthal of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida; and Jeffrey J. Newton, County Attorney, and William C. Turner, Jr., Assistant County Attorney, Orange County, Orlando, Florida,

  for Petitioner

John H. Pelzer of Greenspoon Marder LLP, Fort Lauderdale, Florida; Michael Marder of Greenspoon Marder LLP, Orlando, Florida; Eric D. Dunlap, Assistant General Counsel, Orange County Sheriff's Office, Orlando, Florida; Scott Randolph, pro se, Orlando, Florida; and Gigi Rollini of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Tallahassee, Florida,

  for Respondents Rick Singh, Orange County Property Appraiser, John W. Mina, Sheriff of Orange County, and Scott Randolph, Tax Collector of Orange County

Nicholas A. Shannin of Shannin Law Firm, P.A., Orlando, Florida,

  for Respondent Bill Cowles, Orange County Supervisor of Elections

Laura Youmans, Legislative Counsel, Florida Association of Counties, Tallahassee, Florida,

  for Amicus Curiae Florida Association of Counties, Inc.

David H. Margolis, Orlando, Florida,

  for Amicus Curiae Orange County Clerk of the Circuit Court