502 So.2d 1230 (1987)
DADE COUNTY, Etc., et al., Petitioners,
v.
AMERICAN HOSPITAL OF MIAMI, INC., Respondent.
No. 66689.
Supreme Court of Florida.
January 6, 1987.
Rehearing Denied March 24, 1987.
*1231 Robert A. Ginsburg, Dade Co. Atty. and Robert L. Blake, Asst. Co. Atty., Miami, for petitioners.
Robert M. Ervin of Ervin, Varn, Jacobs, Odom and Kitchen, Tallahassee, and Kaye, Scholer, Fierman, Hays & Handler, New York City, for respondent.
James J. Kenny, Michael Nachwalter, Richard Alan Arnold and Paul M. Bunge of Kenny, Nachwalter & Seymour, P.A., Miami, for Federation of American Hospitals, Florida League of Hospitals, Inc. and Forty-Seven Florida Hospitals, amici curiae.
Alan G. Greer of Floyd, Pearson, Richman, Greer, Weil, Zack & Brumbaugh, P.A., Miami, Gibbs and Zei, P.A., Fort Lauderdale, and Crowell & Moring, Washington, D.C., for North Broward Hosp. Dist., amicus curiae.
Jon W. Zeder and Jerold I. Budney of Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Miami, for City of Homestead, amicus curiae.
Susan F. Delegal, Gen. Counsel for Broward County, and Janet Lander, Asst. Gen. Counsel, Fort Lauderdale, for Broward County, amicus curiae.
OVERTON, Justice.
This is a petition to review Dade County v. American Hospital of Miami, Inc., 463 So.2d 232 (Fla. 3d DCA 1984), in which the district court held that Dade County has a legal and financial duty to provide post-emergency care to its indigent residents and affirmed a trial court's direction to Jackson Memorial Hospital to accept promptly from American Hospital indigent patients whose emergency medical condition has been stabilized. The district court en banc certified the following question as being of great public importance:
Does a county bear a legal and financial duty to provide post-emergency medical care to indigent residents of the county?
Id. at 233. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative, finding no duty exists by either constitutional or statutory provision or by common law. We quash the district court decision and remand this cause with directions to vacate the trial court's partial summary judgment.
This case concerns the transferring of indigent patients from private hospitals to public hospitals, referred to by some as "patient-dumping." It raises sensitive moral and ethical issues, which recent economic developments in the health care field have complicated. At the outset, it must be understood that no fundamental constitutional right or established common law right requires any governmental entity to provide indigent medical care. In a relatively recent decision, the United States Supreme Court stated: "The Constitution imposes no obligation on the States ... to pay any of the medical expenses of indigents." Maher v. Roe,, 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977). The parties agree that there is no common law duty for such care. Indeed, only in the latter half of this century have governmental entities assumed some responsibility for this type of medical care. Thus, whatever legal obligation requires a county to provide indigent health care must derive from statutory mandate. Our responsibility in this action is limited to determining whether existing statutory provisions establish a duty on Florida's counties to provide the cost of post-emergency indigent medical care not funded out of federal or state resources.
In March, 1985, American Hospital of Miami, a private hospital, began this action by seeking declaratory judgment and injunctive relief against Dade County and the Public Health Trust of Dade County. Dade County owns Jackson Memorial Hospital, which it operates through the Public Health Trust. Pursuant to policy established by the Dade County Board of County Commissioners and the Public Health *1232 Trust, Jackson Memorial provides health care for Dade County, admitting indigent and non-indigent residents as patients. As a public hospital, Jackson Memorial receives requests from forty other Dade County hospitals to transfer indigent patients. Jackson Memorial accepts most indigent patients, but transfer requests occasionally exceed Jackson Memorial's capacity and some indigent transfers are postponed or denied.
American Hospital, as a private hospital operating an emergency room, fulfills the statutory duty of rendering emergency medical care to any person. § 401.45, Fla. Stat. (1985). In this action, however, American sought to require Jackson Memorial to accept the transfer of all indigent patients whose emergency medical condition American had stabilized or to reimburse American for the reasonable cost of providing the necessary post-emergency care.
In a partial summary judgment, the trial court found that Dade County and the Public Health Trust "bear a legal duty and financial responsibility to provide medical care for qualified indigent residents of Dade County" and that those entities must "provide post-emergency care to indigent residents ... [and] promptly accept ... transfer of indigent patients whose emergency medical condition has been stabilized." The district court affirmed the trial court's decision by determining that the county's duty to provide post-emergency medical care is established by three statutory provisions: (1) article XIII, section 3, of the 1885 Florida Constitution, presently a statute as interpreted in Cleary v. Dade County, 160 Fla. 892, 37 So.2d 248 (1948); (2) section 154.302, Florida Statutes (1981); and, (3) section 155.16, Florida Statutes (1981).
With regard to the first statutory basis, article XIII, section 3, states: "The respective counties of the State shall provide in the manner prescribed by law, for those of the inhabitants who by reason of age, infirmity or misfortune, may have claims upon the aid and sympathy of society... ." (Emphasis supplied.) The district court held that this provision became a statute under article XII, section 10, Florida Constitution (1968).[1] Dade County contends that the 1885 constitutional provision is not in effect as a statute because subsequent revisor bills failed to preserve it as a statute. The county asserts that, when revisor bills did not include the former constitutional provision, the omissions effectively repealed that provision under section 11.2422, Florida Statutes (1985), which provides:
Every statute of a general and permanent nature enacted by the State or by the Territory of Florida at or prior to the regular and special 1983 legislative sessions, and every part of such statute, not included in the Florida Statutes 1985, as adopted by s. 11.2421, as amended, or recognized and continued in force by reference therein or in ss. 11.2423 and 11.2424, as amended, is repealed.
In arguing that article XIII, section 3, remains effective, American asserts that section 11.2422 does not control because it is expressly limited to statutes "enacted by the State" and, consequently, has no effect on the former 1885 constitutional provision. American also maintains that, because the 1968 constitution expressly recognizes the former constitutional provision as a statute, it is continued in force by reference.
We reject American's contentions and agree with the county that article XIII, section 3, was repealed by subsequent revisor bills. By its express terms, the 1885 constitutional provision was not intended to be self-executing and required subsequent legislative action. We find no effective statute implements this provision. The statute construed in Cleary to implement this provision, section 125.01(4), Florida Statutes (1941), was modified prior to Florida's 1968 constitutional revision. This subsequent modification restricts this provision *1233 on indigent medical care to a "power" of the county. We find no legislative mandate in present statutes to impose this duty on the counties of this state; in fact, a contrary legislative intent appears in other legislation discussed below. See § 155.03, Fla. Stat. (1985).
With regard to the second statutory basis, American argues that section 154.302, Florida Statutes (1977), sets forth the clear legislative intent to impose on the county a duty to provide indigent medical care. Section 154.302 provides:
154.302 Legislative intent.  It is the intent of the Legislature to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides, for all those costs not fully reimbursed by other governmental programs or third-party payors.
As American concedes, the primary purpose of chapter 154, part IV, is to establish the counties' responsibility for medical care costs when one county's resident receives care in another county's hospital. Section 154.306, Florida Statutes (1985), clearly reveals the legislature's intent:
Ultimate financial responsibility for treatment received at a regional referral hospital by a certified indigent patient who is a resident of the State of Florida but is not a resident of the county in which the regional referral hospital is located shall be the obligation of the county of which the certified indigent patient is a resident.
We reject American's argument that section 154.302 has the broader legislative purpose of placing a general financial duty for indigent medical care on each of Florida's counties. We find no such legislative intent in chapter 154.
Finally, considering the enactment of section 155.16, we conclude again that the legislature did not intend to impose a duty for indigent medical care on the counties. First, chapter 155 was not intended to apply to public trust hospitals like Jackson Memorial. See 1973 Op.Att'y Gen.Fla. 073-431 (Nov. 26, 1973). More important, a reading of the chapter shows a contrary legislative intent. For instance, section 155.03 states: "[N]othing herein shall require the board of county commissioners to expend any funds of the county in the maintenance of such hospital or the administration of such trust." § 155.05, Fla. Stat. (1985). With such a provision in the chapter, it would be totally unreasonable to find that section 155.16 expresses legislative intent to create a duty on all counties.
In this cause, amicus briefs of the Federation of American Hospitals, Florida League of Hospitals, Inc., and forty-seven Florida hospitals support American Hospital. They seek a broad ruling that Florida counties have an unqualified legal and financial duty to provide post-emergency medical care to their indigent residents or to reimburse private hospitals for the cost of providing such care. Without question, if the legislature intended to impose such a substantial fiscal duty on the counties, it would have done so directly. The statutes on which the district court relied do not impose this duty. Further, if we construed these statutes to obligate counties, there would remain numerous unanswered questions that we believe the legislature would have addressed,[2] particularly how the counties *1234 would pay the costs arising from this new legal duty in view of constitutional and statutory limitations on their taxing authority. See art. VII, § 9, Fla. Const.
In conclusion, providing health care to our indigent citizens presents a perplexing problem, compounded by recent economic changes. Just two decades ago, almost all hospitals were nonprofit institutions that voluntarily provided indigent care and funded the cost with paying patients, charitable contributions, and tax funds. Today private-for-profit hospitals have appeared and multiplied. This restructuring of hospital care has complicated the problem of indigent health care. Even if courts had the authority, they are ill equipped to investigate and evaluate changing public needs in this area. Post-emergency, indigent health care is a problem for legislative solution. In this regard, we note that the legislature recently enacted a statutory scheme to spread a portion of indigent care costs among all Florida hospitals. See § 409.2662, Fla. Stat. (1984). This partial legislative solution imposes on each profit and nonprofit hospital a 1.5 percent assessment of net operating revenues to establish a fund for indigent medical treatment. § 395.101, Fla. Stat. (1984).
We conclude that no existing legislation imposes a financial or legal duty on the counties of this state to provide their indigent residents with post-emergency medical care. For the reasons expressed, we quash the district court decision and remand this case with directions that the partial final summary judgment be vacated.
It is so ordered.
McDONALD, C.J., and ADKINS, EHRLICH, SHAW and BARKETT, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
The district court's certification that its decision passed upon a question of great public importance gives this Court jurisdiction to review the district court's decision. However, as many decisions of this Court show, we need not answer the certified question as framed by the district court if we find it overbroad in light of the facts and legal issues presented by the case. If we find the question inappropriate to the case, we can simply put aside the question and decide the case.
I agree with the Court that the issue as framed by the district court raises many questions that would more appropriately be resolved by systematic formulation of legislative policy than by adjudication. However, we need not undertake to answer these essentially legislative questions if we confine ourselves to the material facts and legal issues of the present dispute.
The issue in this case is not whether "a county" must "provide post-emergency medical care to indigent residents." This overgeneralized statement of the issue has significant impact on this court's treatment of the case in that, in analyzing the statutes involved, the majority assumes that any duty found would apply uniformly to all counties. There are two narrow issues in this case. One is whether Jackson Memorial Hospital, which is operated by the Public Health Trust, an agency of the government of Dade county, must accept *1235 transfers of patients who are in need of continued hospitalization but who are unable to pay the costs of same, when such patients have been admitted into American Hospital of Miami, but they are medically able to withstand such a transfer and a transfer is requested by American Hospital. The other issue is, when Jackson Memorial Hospital refuses to accept the transfer of a patient from American Hospital, and the patient needs continued hospitalization but is unable to pay American Hospital's fees and charges for same, whether the Dade County Public Health Trust must compensate American Hospital for the costs of post-emergency medical care incurred by such patient following a request for transfer and a refusal of same. If we confine ourselves to the issues actually presented and avoid the broader policy questions, it becomes much more reasonable to approve the district court's decision affirming the declaratory judgment given in favor of American Hospital, essentially answering the above two questions in the affirmative.
The Court's discussion of the several statutory grounds asserted in support of the decision below misses the essential point of this case. Regardless of whether there is a constitutional or statutory duty imposed by state law on counties generally to provide medical care to indigents, it is clear that Dade County, a chartered political entity with plenary governmental home-rule powers, has made a policy determination to do so and has thereby imposed upon itself a substantive legal duty to do so. While Dade County could conceivably decide to close or divest itself of its hospital and discontinue providing medical services to anyone,[1] without violating anyone's legal rights, if it continues the policy of providing medical services to persons in need who cannot pay, it must not be arbitrary in the provision of such services.
Principles of due process of law and equal protection of the law are applicable to discretionary governmental activities. In providing medical services to those of its residents who are unable to pay for them, Dade County Public Health Trust is not free to admit some patients while turning away others in need of treatment except based on differences having a rational relationship to the county's health-care policies. The plaintiff in the present case sought no broad ruling on legally required health care, but merely sought to compel Dade county to carry out its policies in an evenhanded and non-arbitrary manner, treating similarly situated persons all according to the same standard policy.
American Hospital of Miami is a private organization. It has not undertaken to provide hospitalization and medical care without charge to persons in need thereof and unable to pay. American Hospital is not an agency of government and has no control over the extent to which indigent Dade County residents come or are brought to its doors in need of emergency treatment. When such indigent, emergency patients have been treated as required by law and are no longer in a medical condition constituting an immediate threat to their life or health, but are in need of continued care and treatment by hospitalization, American Hospital owes no direct legal duty to continue to hospitalize and treat such patients. When the hospitalization of an indigent patient reaches such a point, American Hospital's course of action is restricted principally by humanitarian and ethical concerns as well as the standards and practices of the medical professionals practicing there.
Such a patient, providing he is a qualified resident of Dade County, had he presented himself at the entry to Jackson Memorial Hospital, would have been entitled to treatment. Thus any post-emergency but medically necessary services provided to such a patient by American Hospital is in fulfillment of Dade County's obligation to the patient and not that of American Hospital. We should therefore hold that Dade County, which supports its public hospital from general revenue derived from taxation paid *1236 by the public generally, and which generally provides free medical care to those residents in need but unable to pay, must accept transfers or pay for the medical care given by others to its qualified residents.
I agree with the Court that the former constitutional provision pertaining to the powers and duties of counties has been effectively merged into currently effective statutes on the powers and duties of counties. I also agree that chapter 155, Florida Statutes (1985), upon which the court in part relies for the proposition that counties are not obligated to spend county funds on hospitals they agree to operate,[2] does not apply to this case. I have some difficulty with the Court's somewhat cavalier dismissal of section 154.302, Florida Statutes (1985),[3] which seems to be a very straightforward statement of intent to impose a duty on counties, appearing as it does as a part of "The Florida Health Care Responsibility Act."[4] Even accepting the Court's conclusion that section 154.302 was intended to work only in concert with section 154.306, Florida Statutes (1985), pertaining to the treatment of one county's resident at another county's hospital or a "regional referral hospital," one is left to wonder why a county should be required to pay reimbursement when its indigent resident receives treatment at a public hospital outside the county but not when he receives treatment at a private hospital within his home county.
In any event I believe the applicable statutes, constitutional law and decisional precedents demonstrate that, while counties generally are not obligated to provide medical care to their citizens, they are free to undertake the mission of providing such service as a matter of discretionary public policy.[5] In the case of a chartered local government with home-rule powers, it is clear that the authority exists to provide such services.
A governmental entity that provides a certain service without receiving payment of a charge or fee in exchange therefor, nevertheless does not act gratuitously. The activity or service is paid for by taxation or other governmental revenue received more or less from the population generally. Once a government entity has established a policy of providing a particular service, it cannot arbitrarily choose to provide it to one and refuse it to another applicant for the benefit.
By holding that American Hospital cannot compel Dade County Public Health Trust to meet its obligations to the citizens of Dade County, the Court leaves private hospitals in a situation where they must either recover the expense of providing such services from their other patients and their insurers through higher charges and fees, or simply refuse to provide needed post-emergency care. I believe that public responsibility and accountability for policies in dealing with an essentially public problem are better served by recognizing that there is a public obligation than by compelling private persons to provide free service. Moreover, I believe that the "dumping" of indigent patients on public hospitals is far preferable to dumping them on the streets.
NOTES
[1] Article XII, section 10, reads as follows:

All provisions of Articles I through IV, VII and IX through XX of the Constitution of 1885, as amended, not embraced herein which are not inconsistent with this revision shall become statutes subject to modification or repeal as are other statutes.
[2] Dade County suggests 25 difficult questions. As Chief Judge Schwartz did in his dissent to the district court decision, 463 So.2d at 235 n. 4, we include ten representative questions:

(a) Must the Public Health Trust reject all paying patients, leaving all of its beds for indigents in light of section 154.11 allowing each trust to set its own rates and charges?
(b) To what extent would Dade County be financially responsible to each entity or person treating indigents?
(c) Would podiatrists, naturopaths, chiropractors, osteopaths or optometrists be entitled to the same rate of reimbursement as other medical practitioners?
(d) If a patient who is not an indigent but incapable of paying is brought to the Public Health Trust needing emergency care, and is treated and stabilized but needs further treatment, must the Public Health Trust transfer that patient to another hospital because it subjects itself to a lawsuit for retaining non-indigent patients?
(e) Out of what fund must Dade County pay for such medical expenses?
(f) In the case of catastrophic illnesses, is there a limitation or cap on the amount hospitals may bill the County?
(g) If raising taxes is needed to appropriate more funds to pay for indigent medical care, is it legally permissible for the lower Court to compel Dade County to raise taxes, notwithstanding the Supreme Court's ruling that only the Board of County Commissioners has the authority consistent with the Florida Constitution to decide the millage rate? See Board of County Commissioners v. Wilson, 386 So.2d 556 (Fla. 1980).
(h) Who are indigents and who decides the various classifications of indigency?
(i) How long must indigents reside in Dade County before being eligible for free medical service, and if a citizen who did not have money to pay for medical needs moved from another state or county to Dade County, and immediately was admitted into a hospital, would that hospital be eligible for reimbursement?
(j) Would Dade County be obligated to reimburse private hospitals and physicians for costs only, or would the hospital be entitled to overhead and profit?
[1] This observation leaves aside for the moment the question of the effect of Dade County's contractual agreement entered into when it took over operation of Jackson Memorial Hospital from the City of Miami. See Cleary v. Dade County, 160 Fla. 892, 37 So.2d 248 (1948).
[2] § 155.03, Fla. Stat. (1985) ("[N]othing herein shall require the board of county commissioners to expend any funds of the county in the maintenance of such hospital or the administration of such trust.").
[3] Section 154.302 provides as follows:

It is the intent of the Legislature to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides, for all those costs not fully reimbursed by other governmental programs or third-party payors.
[4] Ch. 77-455, Laws of Fla.
[5] A perusal of parts I through V of chapter 154, Florida Statutes (1985) and chapter 155, Florida Statutes (1985), reveals that the legislature has answered, or has at least attempted to provide some answers, to many of the unanswerable questions posed by the Court.