**In re SENIOR CARE PROPERTIES, INC., Debtor.**

**Bankruptcy No. 91–07267.**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

Nov. 24, 1993.

W. Kirk Brown, Tallahassee, FL, for debtor.

Harriett Williams, Tallahassee, FL, for creditor.

## ORDER ON OBJECTION TO CLAIM

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CAUSE was heard before the Court on the objection of Senior Care Properties, Inc., a debtor-in-possession ("Debtor"), to the claim of the Tallahassee Memorial Regional Medical Center ("TMRMC"). At the hearing on the debtor's objections to claims, the Court directed the parties to submit memoranda of law within 20 days, and file responses to those memoranda within an additional 10 days. Within these pleadings, the parties raise argument as to the propriety of service of debtor's objection to claim upon TMRMC and of each parties' attempt to introduce additional evidence through the use of affidavits following the conclusions of the hearing. The Court finds that neither party has been prejudiced in the presentment of law or fact due to any potential or actual flaw in service of the objection upon TMRMC. Furthermore, the Court finds that the affidavits may be accepted as evidence as to relevant facts not in dispute. Those facts addressed by the affidavits which are in dispute are irrelevant to the resolution of the issues before this Court. These preliminary matters having been considered and resolved, the Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

TMRMC's claim arises from its treatment of and care given to Catherine Fields, a former resident of the debtor's nursing home facility (the "nursing home"). On or about October 10, 1990, the Debtor "transferred" Ms. Fields from its facility in Eastpoint, Florida to TMRMC's hospital in Tallahassee, Florida. The transfer of Ms. Fields was authorized by her physician at the nursing home, Dr. Photis Nichols, on October 10, 1990. Dr. Nichols authorized the transfer based on his belief that his diagnosis of Ms. Fields' condition as respiratory failure with tracheal secretions and pseudomonis required immediate hospitalization.[1] Nursing records show that TMRMC was notified of the patient's transfer at 8:20 a.m. on the morning of October 10, and that the patient was transported by ambulance to the hospital at 4:00 p.m. that afternoon. The records also indicate that the patient was "discharged" by the nursing home on October 12, 1990.

The patient was accepted by the hospital through its emergency room and treated for two days. The patient's brother was notified by a letter dated October 10, 1990 that the nursing home would "not accept back" Ms. Fields due to the facility's inability to deliver proper patient care, and that Ms. Fields had been "returned" to the TMRMC hospital due to serious illness. The hospital was informed of the nursing home's decision to not re-admit Ms. Fields subsequent to its acceptance of Ms. Fields as a patient.

The hospital seeks the allowance of a claim in the amount of $4,336.70 which it asserts resulted from charges incurred for non-acute care provided during the five day period it took the hospital to secure another nursing home for Ms. Fields.[2] TMRMC asserts that the debtor's actions are tantamount to "patient dumping", a situation for which TMRMC asserts it is legally entitled to seek recovery from the debtor. The debtor, on the other hand, argues that neither the transfer agreement in place between the parties nor applicable statutory law or case authority give TMRMC any grounds to seek recovery for its discharge of Ms. Fields. We find no authority, either in language in the parties' transfer agreement or in the appropriate statutes, to support TMRMC's claim against the debtor. Accordingly, the debtor's objection to claim must be sustained.

■ The starting point in analyzing the merits of TMRMC's claim against the debtor begins with the transfer agreement between the parties. On January 10, 1990, the parties entered into a transfer agreement which requires, *inter alia*, the nursing home to notify TMRMC when a transfer of a patient is being made. The agreement fails to specify

---

1. At the time of her transfer Ms. Fields weighed in excess of 450 pounds and was comatose.

2. The charges were not paid by Medicaid, apparently the patient's sole source of health insurance, because Medicaid does not pay for hospitalization beyond that necessary to treat an acute condition.

how much advance notice is required, nor does it provide a remedy if such notice is not given the hospital. Thus, the issue of whether or when notice of Ms. Fields' impending transfer was given is irrelevant since the agreement provides no remedy for the nursing home's failure to give adequate notice. Moreover, the agreement states:

> Neither [TMRMC] nor [the nursing home] shall assume any responsibility for the collection of any accounts receivable other than those incurred as a result of rendering services directly to the patient. Neither institution shall be liable for debts, obligations, or claims of a financial or legal nature incurred by the other institution, and each institution assumes full responsibility for its own maintenance.

Although this language is far from clear and precise, it appears the parties intended each to be responsible for the administration, maintenance and operation of its own facility. The document evidences an intent to not create a joint venture between the parties to deliver medical and nursing home services to common patients. Accordingly, we find no basis for TMRMC's claim against the Debtor in the transfer agreement.

If grounds for TMRMC's claim are to be found, then it must be found within the provisions of state and federal law governing the administration and operation of nursing home facilities. TMRMC cites § 1395dd of Title 42 of the United States Code and § 395.1041 of the Florida Statutes in support of its position that the transport of a patient from a nursing home to a hospital for the purpose of avoiding the expense associated with the care of a patient is prohibited. Section 1395dd is the provision of the Social Security Act which deals with the examination and treatment for emergency medical conditions. Subsection (a) requires a hospital to perform an examination for the purpose of determining whether an emergency medical condition [3] exists when a patient makes a request for emergency medical treatment. If the patient is found to have an

emergency medical condition, the hospital must provide such medical treatment as may be required to stabilize the patient's medical condition or transfer the patient to another facility in accordance with § 1395dd(c). Section 1395dd(c) states that a transfer is "appropriate" when the transferring hospital provides such treatment as is required to minimize the risks to the patient's health, the receiving hospital has available space, qualified personnel to treat the patient's condition and agrees to accept the patient, the medical records of the patient have been transferred to the receiving hospital, the transfer is effected by qualified personnel, and when the transfer meets such other requirements as may be found necessary by the Social Security Administration. Most importantly, § 1395dd contains a provision which permits any medical facility which incurs a financial loss as a direct result of a participating hospital's violation of § 1395dd to recover its damages under state law in which the hospital is located. 42 U.S.C. § 1395dd(d)(2)(B).

Florida Statute § 395.1041 addresses the delivery of emergency medical services and transfers relating thereto within the context of hospital licensing and regulation. The statute states that emergency medical services are to be rendered by a hospital without regard to the patient's ability to pay for those services. *Fla.Stat.Ann. § 395.-1041(3)(h) (West 1993)*. In addition, no hospital to which another hospital is transferring a patient for emergency medical services may require the transferring hospital to pay or guarantee payment of the patient's treatment as a condition of admitting the patient. *Id.* The section also includes a penalty provision which allows a hospital to recover damages incurred as a result of a physician's or hospital failure to comply with its requirements. *Fla.Stat.Ann. § 395.1041(5)(d) (West 1993) (effective July 1, 1993)*.

■ Neither statute affords TMRMC a basis for asserting a claim against the estate. Section 1395dd is, by its terms, limited to

---

**3.** An emergency medical condition is defined as a condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in: (1) placing the health of the individual in serious jeopardy, (2) serious impairment of bodily functions, or (3) serious dysfunction of any bodily organ or part. 42 U.S.C. § 1395dd(e)(1).

only those situations where a hospital is the transferring party. The term "hospital" is a defined term under the Social Security act, and the scope of the definition does not include nursing home facilities like that operated by the Debtor. *See,* 42 U.S.C. § 1395x. The state statute similarly provides for a definition of "hospital" that fails to include nursing home facilities. *See,* Fla.Stat.Ann. § 395.002(12) (West 1993).

■ Even if we were to agree with TMRMC's assertion that § 1395dd and § 395.1041 prohibited the transfer of a patient by a nursing home with the intent to avoid the expense of caring for the patient, we could find no basis for its claim because TMRMC presented no evidence nor did it argue that the nursing home was not being paid for the services it rendered to Ms. Fields. That the nursing home was apparently motivated to discharge Ms. Fields due to the difficulties in properly caring for her is clear, however, such motivation alone is insufficient to find the nursing home engaged in patient dumping. The essence of patient dumping is the willful attempt to shift the unreimbursed expense associated with the care of a patient to another care provider. *See, Dade County v. American Hospital of Miami, Inc.,* 502 So.2d 1230 (Fla.1987). The fact that Medicaid paid for Ms. Fields' care up to the time she was transferred to TMRMC precludes a finding that the nursing home engaged in patient dumping.

■ TMRMC also argues that Ms. Fields' medical condition was not an emergency at the time of her transfer and that she was transferred in violation of her patient rights as provided by statute. Neither point is relevant to the Court's determination. Patient dumping is not predicated on the medical condition of the patient, but rather on the intent to avoid an unreimbursed expense of caring for the patient. *Id.* Additionally, TMRMC's assertion that the patient's condition was not an emergency is inconsistent with the fact that TMRMC admitted Ms. Fields through its emergency facilities. As noted earlier, hospitals are required under 42 U.S.C. § 1395dd(a) to examine patients so as to determine whether an emergency medical condition exists. The fact that TMRMC admitted Ms. Fields gives rise to an inference that its emergency room personnel concluded that her condition required emergency care. Lastly, state statute makes clear that any cause of action arising from a violation of the rights afforded patients under § 400.022 of the Florida Statutes is personal to the patient. *Fla.Stat. Ann. § 400.023 (West 1993).* Thus TMRMC has no standing to make claim against the debtor's estate based on any violation of Ms. Fields' rights as a patient in the nursing home.

There being no basis for TMRMC's claim against the debtor's estate, it is

ORDERED and ADJUDGED that the debtor's objection to the claim of TRMC be, and hereby is sustained.

DONE AND ORDERED.